Our first case this morning is in re the Estate of Francis Bozarth. For the appellant is Attorney Russell DePue. Yes ma'am. And for the affilee Attorney Alan DeBerry. All right. You ready to proceed? Yes we are. And Justice Pope, I would ask for time for rebuttal. Okay. My name is Russell DePue. May it please the court, I am honored here to be representing the Bozarth siblings here today. They are in the courtroom. These are the grandchildren of Harold Bozarth and the stepchildren of Francis Bozarth, who is the estate that we Francis died on October 25, 2010. Harold died February 8, 1983, 27 or 28 years between them. May it please the court, Mr. DeBerry, executors, current executors of the Bozarth family. Judge Elizabeth Robb presided over this trial for a full two days of trial. And the appeal that was taken on an issue that probably we spent less than 20% of the trial time even discussing. The claimant's waste claim consumed at least 80% and probably more than that of the actual two days of trial. I might digress a minute and say I think this is an important case for the justices here today for really three reasons. And those are outside of this case. But one is the increase or advent of Medicare. The other is the increased exemption in the estate death taxes. And the third is, quite frankly, I think Mr. DeBerry would attest to this, the lack of case law with respect to life estates, current case law. You'll note Judge Robb's citing of Walker v. Pritchard was pre-1900. So the reason that I say that is that the importance of this case with respect to Medicaid is a report from the field, and I think Mr. Prehill would agree, we are using in a daily practice more life estates once again than we have in the past. I think popular in the last 40 years was to have an actual trust, and now we're using those life estates as kind of the poor man's answer to those more explicit trusts. The Illinois exemption for estate tax is now $4 million, so people of substantial means are now using life estates more often than not. And, again, the lack of case law I think I've outlined. So I think that's why this case is important for the error in Judge Robb's order can be found, I think, most explicitly on the fifth page of her order, which is attached as A-1 to our appendix. And if you go then to A-5, and it's record 172, Judge Robb indicates that even if claimants were able to identify the personal property referenced in the final report, a life tenant in personal property gives the life tenant the right to consume such things as cannot be enjoyed without consuming them. That is a correct statement from Walker v. Pritchard, 1887. She goes on to say, though, but Illinois case law is clear that the life tenant of such personal property has the right to consume such property. That is not the law. And what I believe the law is, is embodied in the Quigley case, which is the 1938 Supreme Court case. How do you square Quigley with Walker? I mean, to me, I read Walker v. Pritchard, I read Quigley, and I'm thinking, you know, the Supreme Court in 1887 said one thing, and in 1938 said something else. Maybe they can be squared, but I couldn't figure it out. Well, perhaps they could be squared with this concept. In Walker, we were dealing with 50 bushels of wheat, 100 bushels of oats, horses, cows, wagons, harnesses, family utensils, and lumber intended for use on the farm. The reason I say to square that, I'm thinking the evolution of what is on farms certainly evolved from 1887 to 1938, but I think it also has evolved substantially from 1938 to 2010. So it is the element of not consuming, not consuming meaning cooking with the oats or using the horse harness, and I think that concept is extended, and I'll try to mention that, but to grain in bins. Grain in bins no longer is fed to the cattle on a regular basis, and the grain is sold. It's a cash equivalent. Right, that's easy, but let's say you have a combine, and how long is this period of time we're talking about in this case? It's over 20 years, right? 28 years. Okay, 28 years, and let's say during that period of time you were left a combine that was already 20 years old, and during that 28 years you need to replace the combine, and you put some money towards it yourself plus the combine that you trade in. I mean that gets very complicated. How do you determine that there is or is not a remaining life estate in that piece of property? I think the exception, if I can advance maybe one further step, the exception is Quigley specifically talks about cash, and Walker v. Pritchard does not talk about cash. The lumber is only good if you can use it to repair the barn. The horse is only good if you can use it to plow, and eventually the horse is going to tire and die. It's going to expire, so if you can consume, that's fine. If you can't consume, do you have to reimburse your own life estate with the cost of the Not in the 1880s. I don't think, and nor in 1938 after Quigley. Quigley was addressing cash assets, and the concept of the life estate or the concept of the life estate in cash, Quigley is quite explicit about that. In fact, in Quigley, there is a comment, and this is the last three paragraphs of the case, page 156 in the official report. In support of this contention, the life tenant says that $500 was cash in the bank upon which no interest is being paid. I'll make a point. I have tried to say remuneration many times in my practice here today, and I'm just going to say investments, so that comes up here in a second. So please bear with me, because I just can't say that word no matter how hard I try. The contention of the life tenant is predicated upon an erroneous view of the law. It is well settled that a gift of the use of money to a life tenant is a gift of interest and not of corpus. Fitting Justice Connect's element of using the horse in your daily activity to plant, to harvest, et cetera, is consistent that that does get used up. Quigley points out cash doesn't work that way. Now I'll get to my word. The right to invest and reinvest money for its equivalent in order that his bequest may be made remuneratively, sorry about that, it would be idle to say he must leave such assets dormant. So the investment or reinvestment of cash is part of Quigley's finding. It also goes on to say if the life tenant desires to have possession of the property, he may do so under such reasonable restrictions as the courts may impose. Curiously, I think that means that, getting back to Justice Pope's issue, there are some elements of quantity here, I think. For instance, one reason, one way in which to solve the combine question would be to go to the court and say, hey, I've got a $400,000 combine that I want to trade in on combine number two. And the market value of that is $300,000. You tell me, Judge, what I'm going to do then with this life tenancy interest in the combine? I have this equity. Can I trade it in? Is that okay? I need to notify the remainderment. Here's what I'm doing. I think that might be what Quigley is indicating on, again, substantial assets. I don't know if that helps in answering or jiving Walker with Quigley, but I think it does mean that in our case here today, that if I cannot convince you that all of Harold Bozarth's assets went into the life estate, then Mr. DeVere's argument is valid. I believe that all of Harold Bozarth's estate went into the life estate. And I point to his will in that regard. There are a number of points in his will, and that's appendix page 21, petitioner's exhibit 10. Paragraph second of his will says, I will divide and separate all of my property of every kind, nature, and description, and wherever situated. All of my property of every kind, nature, and description, and wherever situated. It goes on to say, and any property in which I have an interest. I'm not sure I know what that means, quite frankly. However, it follows with the typical life estate language to Frances for hers to use and enjoy for and during the term of her natural life, the typical language of life estate. The second paragraph talks about any property which is now held in joint tenancy with right of survivorship with my wife and myself is to pass under joint tenancy. Now, that paragraph doesn't even need to be in the will, but it confirms and acknowledges that there are separate assets and joint tenancy assets. Those joint tenancy assets pass to Frances. But everything else is in this life estate. Theoretically, and again we get to an element of quantitative analysis, not to be funny, but I believe his underwear and shirts are probably in this life estate also. Now, that's not what we're talking about today, but there is no other element of Harold's will, there is no other property that doesn't go into the life estate. It's joint tenancy property and life estate. So everything in his estate is in the life estate. The element also goes on, I believe, to accomplish this trust being set up. Mr. Deberry and I, along with Mr. Freehill, I concede, I don't think there was enough language in here to set up a trust like we would conceptualize a trust. We're arguing about the effect of a life estate here today, not some of this other trust language. However, in the will it talks about the entire corpus, again that's a trust language, but it also says and any accumulations. In my mind what that means is and any accumulations means, again in line with Quigley, you're investing this money, you're having money come in, you're having increase in maybe equities, you're having increase in property values, whatever those kinds of investments might have been, those profits are to pass to the remainderment also. An example might be, again under the Principle in Income Act, you invested in Apple Computer, Apple Computer is now worth a lot more. So now that it is worth a lot more, that would be an accumulated value if Frances died with that Apple stock and she's allowed to make those investments throughout her lifetime, trading in, trading out, selling, buying and doing those things that you would normally do to invest your funds, invest your cash. We don't have any complaint about that issue specifically. The specific issue that we are thinking that Judge Rob erred on was misinterpreting the will. Misinterpreting the will because in that same section of her order, she's talking about that number one there's a right to consume the property, but she's also talking about failing to identify the life estate assets. She never identified all of Harold's estate going to the life estate. That was not in her order and again, quite frankly, I think there's a degree of quantitative analysis that needs to be... Why would she need to identify everything if your claim is as to specific things that went into the life estate? Because we believe that the proper ruling of the court at this junction with you all would be that the explanation of personal property in the final report, and this is Appendix 23, the undersigned would further report that she has paid burial expenses. We have concluded that those expenses, that's the only place for that expense to come from. We're fine with that concept. The undersigned would report that all items as inventoried, and I emphasize as inventoried, and this is in the final report about a year and two months later. Mortgage notes and cash, $100,800.79. I say cash because those are cash equivalents, but Justice Kinect, we're also thinking that the personal property, including grain and other items of personal property, $67,248, is also subject to this life estate restriction that we're speaking of. Grain, again, being a cash equivalent, and it is then up to the estate to show what those items would have been. Our concept would be that as you close the estate, you set up a separate account and you say this is the life estate money, this is the life estate grain sales when I sell them, and here is my life estate account. So our claim today, again, is for assets under a, if you want to call it constructive trust, it's not a claim of proving a contract. This is a claim, again, it sounds insulting, that Frances didn't handle those assets properly. She didn't handle those assets in this accounting method at the time of closing the estate. So Mr. DePue, are you asserting a claim to the $100,000 or to the $167,000? We are asserting a claim to $100,000, $800 of cash, and we believe that the court should indicate that the $67,248 is also the burden of the life tenant to show what happened to those funds. There are two different classifications of property, yes. But that $67,000 includes grain, and didn't Walker say grain would be the type of a thing that would get consumed and you would no longer have a claim on that? The 50 bushel of oats and the 100 bushel of corn, yes. The grain that would total $67,000 or part of $67,000, I say no in that sense because it would be a cash equivalent. So your thought would be that a proper accounting in future would show that $67,000 in grain was sold, received by the life estate. There were some expenses of household or whatever that could be charged against that, but the remainder of it should have been segregated and only the interest from that should have been used. So you might have ended up with $145,000 of cash because the grain would be converted to a cash equivalent. And once you assert the claim, it's the responsibility of the life tenant to say this is how I used it, or a record showed this is how it was used. And then there would be a dispute or an agreement about whether it was used properly. One last question. What did Judge Rob say about that $67,000? Well, I think she said that it doesn't make any difference because Francis could have spent all the money and did spend all the money. So she didn't get to that point of between the $100,000 and the $67,000. She indicated all of that was consumable, and that's where we believe she misinterpreted the word. Thank you, Mr. DePue. You'll have time on rebuttal. Thank you. Mr. DeVere? Good morning. Alan DeVere for the estate, and I please support the counsel. Much of the appellant or claimant's argument was directed here at an interpretation of the underlying trial court order that Mr. DeVere, can you keep your voice up? That's not a microphone that will Oh, it's not. Okay. It records. Just try to keep it up a little. Much of the appellant or the claimant's argument here this morning was based on an interpretation of the trial court order that the reference to the consumption or the Walker v. Pritchard case presupposed a finding that all of these assets were indeed subject to a life estate sufficiently identified by the grantor or the settler as being life estate assets, such as that $100,000 or the $67,000. The appellee's or the estate's view of the order is that the underlying trial court order was based on a finding of fact, and once the determination was made that the will of Harold The next step would be if the grantor or the settler of the life estate didn't provide a clear listing or a distinction as to what assets were his individually owned, and then which of those assets he wanted to claim or wanted to have subject to a life estate. If someone other than the grantor or the settler is trying to subject assets that are in possession of another, in this case the estate, if someone other than the grantor or the settler is wanting to recoup assets that aren't in their possession, then they have to prove that those assets were indeed subject to a life estate. I believe the trial court considered all of the evidence over the course of two days, which included those two estate documents. Let's just talk about the cash. Forget the mortgage, though I assume it may be within, if looking closely at the inventory of the estate, you can figure out how much that was. Give me your best argument that that's not specifically identified by the inventory, and if the inventory has any meaning at all when it's given to the court, doesn't that establish from the outset that that was specifically identified? If you agree with that, then why isn't that part of the life estate given the language and the will? I believe it's probably based on two underlying notions and examination of the language within the inventory, and then within the final account, the ambiguity therein. I believe this $100,800.79 was identified as under the category of mortgages, notes, and cash. So you're telling me the estate files an ambiguous inventory and final account, and the burden for clearing that up passes to the party that just holds up their hand and says, we've got a life estate and we think that's in it. Yes, because the remainder men are saying that we know that was $100,000 in liquid cash and that that should have been preserved and passed on to us as remainder men. I'm saying that what the trial court had to view or examine as far as determining the identity of that $100,000, whether it was cash or whether it was comprised of some liabilities that were ultimately offset against that figure, resulting in perhaps no cash or a lesser extent of cash. Well, doesn't the final accounting and or the inventory or looking at them together show what the liabilities of the estate were? Well, when looking at them together, I think there's further ambiguity identified wherein in the inventory it identifies the total personal estate as valued at $105,000 and then it identifies the $100,000 figure a little more definitively with regard to the purchase agreement, for instance. It says a Corn Belt purchase agreement. And so I don't know if a trial court or a fact finder is able to just based on those two documents alone conclude that those two documents on their face are sufficient to satisfy the preponderance of the evidence standard that a claimant, an estate claimant has in an estate. Do you think it's a coincidence that the figure $100,800.70 occurs twice? I wouldn't say it was a coincidence. I think they are. If it's not a coincidence, why should we conclude that that's the cash assets that the estate in its own inventory said it possessed? Well, if that $100,000 figure was identified or categorized as simply cash on both documents or even on one document, there would be a stronger argument obviously that that was $100,000 in cash. There's no doubt about it. What was it? What do you suggest it was? Well, it was comprised of mortgages, common notes, and cash. So cash or cash equivalents? I don't think it would be cash equivalents. It could also be comprised of liabilities. You mean the estate in its listing of assets mistook liabilities for assets? No, I don't think in a typical – I don't know what exactly the practice of that particular estate attorney was, but I'm saying that perhaps that estate attorney did not segregate assets in a separate category of liabilities that would be offset. In this case, it appears that assets and liabilities were lumped together. But I can't – based just on those two documents, I don't know exactly what went into compiling that document by the estate attorney. And further, there was a – I think the Proctor's finding that – So the attorney for the estate filed an inventory and a final accounting that no one can decipher? Yeah, and I don't know – perhaps I filed some estate documents that also have some ambiguity in them. I don't think that – Well, you just gained points for candor. Well – You'd be willing to admit that you might have done it at some time. I think ideally we would strive to have an unambiguous document in an important – something such as an estate document where you can't go back and ask the decedent, or in this case, the estate attorney. In some cases, you can go back and get testimony from the estate attorney. But the estate attorney, my understanding is, passed. And I guess in order to further support the claimant's argument with regard to that, what exactly was meant back in the 1980s when we described things? Or was that a term that was commonly used on the state inventory or accounting? The claimant may have brought in an opinion or put on an opinion witness in connection with attempting to meet their burden of proof, perhaps an experienced estate planning lawyer that might have said, yes, that was common practice back then. And even though those three words are subject to some interpretation, this is what it meant back then. And in this case, the trial court did not have that kind of evidence before them to consider along with all the other evidence as to whether the burden of proof had been met. In the end, I think this trial court ruling was based on a finding of fact rather than an erroneous interpretation of the law. I think the discussion regarding Walker v. Pritchard was directed at perhaps the $67,000 in grain. I don't think that the trial court first identified. I found that these assets, the $100,000, the $67,000 worth of other types of assets, were assets that were subject to a life estate and then made a ruling that after that finding of fact, I'm therefore applying this law, this consumption, or this Walker v. Pritchard, as to all of those assets. I think the primary focus of the order was the finding of fact that first of all... So if Judge Rob was wrong on the law, you still... No, I don't think so. Well, you're saying the finding about consumption doesn't make any difference.  We issued an advisory opinion that says we think that unless the language of the life estate is more specific, you can't use it up so that it's diminished. You can live in the house, but you can't tear it down and sell it for lumber. Whatever the example is, but forgetting that for the moment, you're back to the point that nobody knows what's in the life estate. Even if we did know what was in the life estate, these items aren't specifically identified. Am I... Correct. I think the discussion regarding Walker v. Pritchard was thrown in to say not only is there a lack of identification of the life estate assets in the first place and a sufficient tracing to overcome the burden of the preponderance of the evidence, to establish those assets were subject to a life estate, even if some of them were, as you say, maybe an advisory type of an opinion. Even if I did find that $67,000 was sufficiently identified as a life estate asset, I still think the consumption argument or this Walker v. Pritchard may be controlling with regard to those assets. But I don't think that she specifically directed that reference to Walker v. Pritchard with regard to the $100,000 asset, which is the issue here. Mr. DeVerry, under the will, though, do you agree that paragraph 2 of Harold's will gave Francis a life estate in all of his own property? It does. So everything he had that wasn't in joint tenancy, she only received a life estate. It establishes, I think it's sufficient language to establish a life estate. But I think that the next step that's critical, especially in something as problematic as a life estate in personal property, is that the grantor or the settlor has to take that next step. And I know you might be thinking, why should we penalize the remainder because the grantor or the settlor didn't take that next step and identify all these assets such as personal property items. I think it's incumbent upon the grantor or the settlor attempting to establish a life estate to at least identify the bigger items, bigger ticket items. So you don't think the inventory and the final account do that? I don't think so. I don't think the... If we think it does, do you lose? No, I don't think that those assets were identified as being assets individually owned by Harold Bozsark that he could even subject to a life estate. If we conclude that there was cash or cash equivalent of the $100,800.70, then that's established on this record. Do you lose at that point? If the court concludes that the applicable standard of review has been met, that when viewing all the evidence in the light most favorable to the state, there's no evidence whatsoever that could support the trial court's fact finding that the claimant failed to meet their burden. If just looking at that evidence and if you view that particular evidence in the light most favorable to the state, find that still that was sufficient... Why is that the standard of review? Was there some testimony in this case that pertained to the question of what that figure means or is this all just documentary evidence which should be reviewed de novo? Well, I guess my view of the trial court order or the issue under review in the trial court order is that it was a fact finding. Well, there's a lot of fact finding, the dinner bill and all the rest of this stuff. I'm focusing on the assets, the cash or cash equivalent issue of $100,800.70. Who testified as far as what that meant or was that based upon documents? Well, no one provided further testimony on those or corroborated... Then why shouldn't we be reviewing the trial court's judgment de novo? I feel it's a factual finding if the court disagrees, obviously, but I don't think it's questionable or something that would be properly subject to de novo. On page 16 of your brief, you discuss Walker versus Pritchard. And you cite the case and say, A life estate and personal property gives the life tenant the right to consume such things as cannot be enjoyed without consuming them, and to wear out by use such things as cannot be used without wearing them out. I think that's an accurate representation of what Walker stands for and says, but it seems to me none of that applies to cash. It applies to horses. It applies to grain. It applies to all kinds of things that might, as Justice Connick said, retire and die or spoil or that you have to do something with. Cash sits there. It's not going to wear out by use. And the idea that it gives the life tenant the right to consume such things as cannot be enjoyed without consuming them, that doesn't apply either, does it? I don't know that Walker versus Pritchard does extend to simply assets that have been sufficiently identified as cash. So if we're talking about cash, why isn't Quigley then, since it also dealt with cash, the definitive resolution of this case? Well, we don't know to what extent we're dealing with cash. I don't believe that. Assuming we find that those are cash or cash equivalents from the inventory, $100,000, $800, and 70 cents, why doesn't Quigley resolve the question of how that has to be treated as a life estate? Quigley may be more determinative on a strictly cash issue if we're dealing with cash, that is, than Walker versus Pritchard. The $67,248 figure, is there agreement that that represents grain on hand? Is there an agreement between them? I mean, does the evidence show, do the documents show, that that figure was grain on hand at the time of Harold's death? Again, I believe because the lower court didn't specifically say that that grain was subject to a life estate, we haven't necessarily agreed during the course of the trial. I think what happened during the trial... Well, if it was subject to a life estate, is that specifically identified? The language within the inventory and the final account, I would have to take a look at it, but I know it did refer to grain, and it didn't seem to be as ambiguous as this $100,000 category. So if you had a herd of cattle, you could feed it? If there are no cattle, isn't that Mr. DePue's view that that's the equivalent of cash on hand? Whatever it could be sold for, and there may vary in grain prices, but that it is a near-liquid asset? Well, that could be, but I think the cattle would be viewed as an asset that could only be enjoyed through consumption, not necessarily actually eating the cattle. But you'd have to feed them. That's what the grain was there for. That goes back to Walker's earlier case. That's the purpose, just like the 50 bushels of oats. That was to feed the horses that you were going to use in the field. The duty of the life tenant with regard to, for instance, cattle, would be to keep this cow alive indefinitely. I think, like the grantor, the husband in this case, intended his wife to be able to use the cow for milk or whatever she would have to do with it. And if the cow would happen to be living at her death, pass that along to the remainder men. Well, if there's beef cattle. But now I'm just talking about the grain. I'm trying to make the point that it would be okay, even under modern, today, to use the grain on hand to feed the cattle that are part of the farming operation that's part of a life estate. I think so. But if there's no cattle and there's no farm, nothing left to be done, and I've got a bin full of grain, I'm going to sell that grain. I'm going to convert it to cash, aren't I? But my understanding, at least from the evidence that was presented at the lower court, the testimony was that they did keep a certain number of cattle and animals around the farm that were fed the grain and so forth. And so I don't know that there was sufficient testimony during the trial court that, well, at the time of the death of Harold Bozarth, there was no longer these animals that were around throughout their marriage that the grain was used to feed. I don't know that that was established that, well, that may have been the case while they were married, but when Harold died, there was no more animals around, and so Frances had no choice but to sell that. She should have sold that grain and converted it to cash. But we don't know whether she did. I don't think there was any. I'm quite certain there wasn't testimony as to that issue. Thank you, Mr. DePuy. Mr. DePuy, rebuttal? I'll make one real brief point, Justice Stagman. $100,800.79. You're correct. Again, I'm making light of that, and I shouldn't. We do agree, and we have conceded that the $28,555.44 was outlined on page 33 of Arbery. As far as the expenses, Mr. DeVerey indicated, and Justice Kinect, your question, I think, was right on with the idea that if there were liabilities of the estate, you list them as being paid in that final report. So that's where the liabilities are from, not this concept of maybe there's mortgages and those kinds of things. In an inventory, you only put the positive assets for the estate. You don't put down what you owe in that sense, and you put that down as expenses of the estate. If we agree with you, what relief are you requesting from this Court? We are requesting that the – let me make one more point, if I may, knowing my time is short. Sure. The final report also has language on page 2, which no one generally reads, but on page 2 of the final report, which would be our Appendix 24, the undersigned would further report that she has retained the remaining assets and set estate in accordance with the last will and testament of the decedent. That's in the final report. She self-attesting, saying, hey, I'm going to handle these assets the way the will told me to handle the assets. That's also in this final report. And I think if I don't say that today, that's a very important part of what our reliance is, that Judge Rob didn't find the life estate in all the assets, but we had this further report that says, I'm going to handle this, our opinion, like a life estate with all the remaining assets. How that relates to your specific question, we believe then that the $67,248 carries that same burden of the life tenant, meaning the life tenant says this $67,248 was cattle, as Judge Kinect said, grain in the bin, whatever it might be. Unfortunately, we don't have the Illinois Inheritance Tax return, federal estate tax return, and so therefore, our opinion is that best served future people with life estates in this nature would be to allow for and require then the life tenant to be the one that is the garner of this bucket of aspects. On the $67,248, your point I think is, we've established that that existed by the final report in the inventory. We've established that the life tenant says, I've got those in hand, this is what I've got. That establishes an effective presumption, and that can only be rebutted by the life tenant accounting for how that grain was used. If it was used to feed cattle that were on the farm and was part of an ongoing operation, that would be natural consumption. If the farming operation came to an end, then that $67,248 in grain, one would expect that it would be viewed as an asset to be sold, to be properly shepherded. You wouldn't let it sit in the bin and spoil. You'd sell it. That's consumed by going out there each day and getting a bowl of corn and eating it. Again, or feeding it to the cattle. Those two concepts, I think that goes back to what Justice Pope asked at the very beginning, that in the modern farming operation, you don't consume the grain that you grow on your farm. What relief are you asking for this Court? The establishment of $168,000 minus our $28,555 as an award to be paid from the estate to the remainder. The reason I ask that is it looked to me as if your, not just primary, but essentially sole claim here was for the $100,879. Issues presented for review, whether the trial court improperly required claimants to prove the contents of a life estate, and two, if claimants are required to prove the contents of a life estate, plaintiff claimants with their burden is the $100,879. And the last part, the entire Roman II of your brief, just deals with that same $100,879, and your conclusion is we should reverse the trial court, that claimants are entitled to a portion of the cash of the estate. That's correct. It sounds to me like essentially it's the $100,879, which are an issue, and that you're asking us to reverse the trial court and say it goes to you folks, and the $67,000 is just kind of floating in the ether. I don't believe so with respect to the second argument of our brief, where we did identify the $168,000, and that would be on page 34 and 35, Your Honor. Well, your prayer for relief doesn't include $168,000. It says a portion of the cash, which I would assume, even though we found $168,000 somehow is the total, the part of cash money, so to speak, that's been identified and that Quigley covers would be the $100,879. I think that's correct. Okay. Thank you, Counsel. Thank you. Before we take this matter under advisement, we'll be in recess.